UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x

SCOT KNABLIN,                                          :
                                                      :
                    Plaintiff,                         :
                                                      :         **ORDER DENYING**
        -against-                                      :         **MOTION TO DISMISS**
                                                      :
CITY OF MILFORD,                                       :         3:24-CV-183 (VDO)
                                                      :
                    Defendant.                         :
------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Scot Knablin commenced this action against his former employer, Defendant City of Milford, alleging two claims arising out of the denial of Plaintiff's application for pension benefits: (1) that Defendant violated Plaintiff's due process rights under the Fourteenth Amendment of the United States Constitution, made actionable under 42 U.S.C. § 1983; and (2) that Defendant breached a collective bargaining agreement under Connecticut law. Before the Court is Defendant's motion to dismiss all causes of actions for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendant's motion to dismiss is **denied**.

## I.    BACKGROUND[1]

### A.    Pre-Suit Events

Plaintiff was a police officer employed by Defendant from 2005 to 2023. (Compl., ECF No. 1 ¶¶ 11, 13.)

---

[1] The Court accepts as true the factual allegations in the Complaint and draws all reasonable inferences in Plaintiff's favor for the purpose of deciding Defendant's motion.

On November 14, 2022, a woman reported her former boyfriend's harassment to Plaintiff, which included the former boyfriend sending hundreds of text messages to her. (*Id.* ¶¶ 15–16.) Because Plaintiff and his supervisor concluded there was probable cause that the ex-boyfriend violated a protective order by sending the messages, they submitted a warrant for the former boyfriend's arrest to the State's Attorney for the judicial district of Ansonia/Milford. (*Id.* ¶ 18.) While the application was pending, on December 6, 2022, the woman was killed by her former boyfriend with an axe. (*Id.* ¶¶ 14, 20.)

Plaintiff then sought assistance from Defendant's Employee Assistance Program ("EAP") for emotional trauma. (*Id.* ¶ 21.) In December 2022, Plaintiff took four days off, including two sick days due to stress and anxiety. (*Id.* ¶ 22.) On December 12, 2022, Plaintiff met with Captain Garon DelMonte to discuss the events relating to the murder and the symptoms that Plaintiff had been experiencing since then. (*Id.* ¶¶ 23, 24.) Captain DelMonte then escorted Plaintiff home and confiscated Plaintiff's weapons. (*Id.* ¶ 33.) On the next day, Captain DelMonte placed Plaintiff on a paid administrative leave of absence and told him not to return to work until further notice. (*Id.* ¶ 34.) Around December 15, 2022, Defendant publicly announced Plaintiff's leave of absence, specifying that the leave was pending the results of an investigation into the victim's November 2022 complaint. (*Id.* ¶ 35.) Plaintiff continued to receive counseling through the EAP, where the EAP counselor referred him to another provider for medication. (*Id.* ¶¶ 36, 37.)

Defendant conducted an internal investigation of Plaintiff's conduct throughout 2023. On January 3, 2023, Captain DelMonte questioned Plaintiff at the police station regarding the victim's harassment complaint and, at the conclusion of the meeting, required Plaintiff to turn in his identification card and badge. (*Id.* ¶¶ 38, 39.) Plaintiff then learned that Captain

DelMonte was making an "Injured on Duty" report for the events Plaintiff witnessed at the murder scene. (*Id.* ¶ 40.)

On April 25, 2023, Plaintiff learned that the Internal Affairs investigation was complete and that it recommended the termination of his employment. (*Id.* ¶ 45.) Plaintiff then attended a City of Milford Pension Board meeting and was advised that Defendant was offering him a pension based on his mental health, and that he would be terminated if he did not apply for the pension. (*Id.* ¶ 46.) On May 2, 2023, Captain DelMonte completed the Internal Affairs Investigation Report, which identified numerous alleged policy violations by Plaintiff that led to a delay in issuing the arrest warrant for the victim's ex-boyfriend. (*Id.* ¶¶ 50–52.) Based on a review of Captain DelMonte's report, Deputy Chief B. Rojee authored a report in which he concurred with Captain DelMonte's findings and recommended that Plaintiff's employment be terminated. (*Id.* ¶¶ 54–55.) Captain DelMonte advised Plaintiff that his employment would be terminated at a meeting of the Milford Police Commissioners later in May 2023, and that he would remain out of work until that time. (*Id.* ¶ 59.)

Thereafter, Defendant continuously pressured Plaintiff to resign from his employment despite its failure to address other factors that led to the delay in obtaining the arrest warrant. (*Id.* ¶¶ 53, 60, 61.) Plaintiff subsequently submitted paperwork for a medical pension and was then advised by Defendant that the paperwork would not be submitted for approval to the Pension and Retirement Board unless he first resigned and, if he did not resign, he would be terminated and not receive the disability pension. (*Id.* ¶¶ 61–62.)

On July 23, 2023, Plaintiff resigned from his employment. (*Id.* ¶¶13, 66.) Then, in December 2023, Plaintiff learned that the Pension and Retirement Board denied his application for a service-connected disability pension. (*Id.* ¶ 70.)

**B.    The Pension Agreement**

During the events underlying this action, Plaintiff was covered by the terms of a collective bargaining agreement ("Pension Agreement") between Defendant and Milford Police Union Local 899, AFSCME, Counsel 15, AFL-CIO ("Milford Police Union"). (*Id.* ¶ 71.)

The Pension Agreement provides for two types of service-connected disability pensions. The first pension, available under Paragraph 5A, requires an applicant to be found "disabled so as to be unable to perform active service" after an examination by two medical examiners:

> Each employee of the Milford Police Department, regardless of age and length of service, who shall become permanently disabled so as to be unable to perform active service in said Police Department because of diseases contracted, exposure endured, or injuries received in the performance of his or her duties, shall be retired by the Retirement Board on an annual pension for life, payable monthly from the Retirement Fund . . . provided any such employee who requests or is being considered for such disability retirement, shall be examined by two (2) impartial medical examiners, and further provided that he or she shall be found by such medical examiners to be disabled so as to be unable to perform active service in said Police Department

(*Id.* ¶ 77; ECF No. 1 at 25 ¶ 5(a).) The second pension, available under Paragraph 5B, requires a finding that the applicant be found "permanently disabled so as to be unable to engage in any substantial gainful activity by reason of medically determined diseases contracted, exposure endured, or injuries received in the performance of his or her duties" after an examination by two medical examiners:

Each employee of the Milford Police Department, regardless of age and length of service, who shall become permanently disabled so as to be unable to engage in any substantial gainful activity by reason of medically determined diseases contracted, exposure endured, or injuries received in the performance of his or her duties, exclusive of heart disease and/or hypertension as defined in Connecticut General Statute Section 7-433 (c), which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months, and for which he would qualify for disability benefits under the Federal Social Security Law if he were eligible for such benefits, shall be retired by the Retirement Board on an annual pension for life . . . provided any such employee who requests or is being considered for such disability retirement, shall be examined by two impartial medical examiners, and further provided that he or she shall be found by such medical examiners to be disabled so as to meet the requirements provided for herein.

(*Id.* ¶ 88; ECF No. 1 at 25 ¶ 5(b).)

## II.   <u>LEGAL STANDARD</u>

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015) (citing *Ofori-Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 300 (2d Cir. 2006)). "To survive dismissal, the pleadings must contain 'enough facts to state a claim to relief that is plausible on its face[.]'" *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104,

111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal citation omitted).

## III. <u>DISCUSSION</u>

### A. Due Process

Plaintiff first alleges pursuant to § 1983 that he was deprived of his property right to a disability pension without due process of law. Defendant argues that Plaintiff's due process claim must be dismissed because he fails to allege a property interest protected by the Fourteenth Amendment.[2]

Section 1983 provides a plaintiff with a cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws," 42 U.S.C. § 1983, including the Due Process Clause of the Fourteenth Amendment. "A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). Property interests "cannot be found on the face of the Constitution, but rather 'are created[,] and their dimensions are defined by[,] existing rules or

---

[2] The Court need not address Defendant's argument that the facts alleged do not demonstrate that Plaintiff was denied due process because Defendant "raise[s] it for the first time in [its] reply brief." *Wallace v. Sharp*, No. 19-CV-391 (MPS), 2020 WL 1492875, at *12 n.6 (D. Conn. Mar. 26, 2020) (citing *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief.")).

understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits.'" *Looney v. Black*, 702 F.3d 701, 706 (2d Cir. 2012) (quoting *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 576–77 (1972)). "[A]lthough a public contract can confer a protectible benefit, not every contract does so[.]" *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 30 (2d Cir. 1994). "The issue of whether an individual has such a property interest is a question of law." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994).

Contrary to Defendant's contention, the Court finds that Plaintiff plausibly alleged a protected property interest in a disability pension. As the Second Circuit has held time and again, public employees have a property interest in certain retirement benefits, including disability pensions. *Russell v. Dunston*, 896 F.2d 664, 668–69 (2d Cir. 1990) ("The entitlement to disability retirement is a constitutionally protected property interest for purposes of Section 1983. . . . [M]unicipal employee retirement benefits are constitutionally protected property."); *McDarby v. Dinkins*, 907 F.2d 1334, 1336 (2d Cir. 1990) (retired police officer has "a protectible property interest in his city pension benefit"); *Winston v. City of New York*, 759 F.2d 242, 244 (2d Cir. 1985) ("[T]eachers have a property interest in their contractual right to a pension upon fulfilling the statutory conditions[.]"); *Basciano v. Herkimer*, 605 F.2d 605, 609 (2d Cir. 1978) (former city employee's interest in "accident disability retirement benefits" was a property interest). As to the alleged property interest here, Plaintiff attaches as an exhibit to the Complaint the Pension Agreement, the purported source of Plaintiff's protected interest in a disability pension. Plaintiff alleges not only that "[t]he plaintiff satisfied the conditions for being granted a service-connected disability pension under the terms of the Pension Agreement" but also that "because of injuries received in the performance of his duties, the plaintiff was entitled to a service-connected disability pension under the provisions ¶ 5A" of

the Pension Agreement. (Compl. ¶¶ 76, 78.) Plaintiff's plausible allegations regarding a term in the collective bargaining agreement guaranteeing a disability pension prevent dismissal of the due process claim due to the failure to allege a protected property interest. *See Jackson v. Roslyn Bd. of Educ.*, 652 F. Supp. 2d 332, 342 (E.D.N.Y. 2009) (finding a constitutionally protected property interest in disability retirement medical benefits where "such coverage is supported by the provisions of the collective bargaining agreement"). While Defendant disputes whether two independent medical examinations indicated that Plaintiff was permanently disabled, as required by the eligibility requirements (Mot., ECF No. 27 at 1; Mem., ECF No. 27-1 at 7), that is an argument for later in the litigation. Plaintiff alleges that two physicians "concur that the plaintiff is not able to perform active service as a police officer." (Compl. ¶ 86.) Resolving a factual dispute regarding the medical examinations is not appropriate at the motion to dismiss posture.

### B.  Breach of Contract

In the second claim, Plaintiff alleges that Defendant breached a collective bargaining agreement made between Defendant and the Milford Police Union by refusing to provide Plaintiff with a service-related disability pension. Defendant argues that Plaintiff fails to state a breach of contract claim because he fails to allege that he was entitled to a pension under the terms of that agreement.

When a plaintiff alleges a breach of contract claim under Connecticut law, he must set forth sufficient allegations showing the following elements: "the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Lee v. Yale Univ.*, No. 22-2634, 2023 WL 4072948, at *1 (2d Cir. June 20, 2023) (quoting *Meyers v. Livingston, Adler, Pulda, Meiklejohn and Kelly, P.C.*, 87 A.3d 534, 540 (Conn. 2014)).

The Court finds that Plaintiff sufficiently alleged facts to support each element of a breach of contract claim. As to the existence of an agreement, Plaintiff attached the Pension Agreement to the Complaint and alleges the provision of that agreement upon which the claim is based, stating that Defendant "was contractually obligated under ¶ 5A[] to retire the plaintiff on an annual pension for life[.]" (Compl. ¶ 293.) Plaintiff further shows performance and breach, alleging that he satisfied the conditions for being granted a service-connected disability under ¶ 5A of the Pension Agreement by identifying two medical examiners who "found that the plaintiff was unable to perform active service in the Milford Police Department" and thus, in refusing "to provide the plaintiff with a service-connected disability pension, [Defendant] breached the terms of the Pension Agreement[.]" (*Id.* ¶¶ 294, 297.) Finally, as to damages, Plaintiff alleges that Defendant "has caused the plaintiff to suffer economic losses in the form of unpaid disability retirement income and retirement benefits." (*Id.* ¶ 300.) Plaintiff's allegations therefore constitute a plausible claim for breach of contract.

## IV.   **CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is **denied**. Defendant shall file an answer to the Complaint within **fourteen days** of this order.

**SO ORDERED.**

Hartford, Connecticut
November 22, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge